Good morning, Your Honor. My name is Sylvester Smith, and along with Mr. Maximillian Sprinkle, we represent the appellant, Mr. Nikkolas Thompson. As the court is well aware, this is a matter of a civil procedure, excuse me, a civil forfeiture action. And in civil forfeiture actions, the statute and the case law all slant in favor of the government. So it is incumbent upon courts to ensure that the government is held to meet its obligations in the statute in order to preserve the constitutionality of the statute. And so here we're going to argue that the government and the courts failed Mr. Thompson in that regard in a few key areas. First, the court determined that Mr. Thompson had standing. Subsequent to that, Thompson filed for dismissal. Pursuant to Rules G8B1, a claimant who establishes standing may move to dismiss the action under Rule 12B. Thompson so moved. However, the court dismissed or denied or even ignored that motion, even after stating that Thompson had standing. Here, the claim was dismissed due to Thompson's alleged failure to satisfactorily answer special interrogatories. We argue that the special interrogatories were unnecessary because the court had determined that Thompson had standing. To the extent that special interrogatories were needed, we argue that his responses were sufficient to demonstrate his standing as required, pursuant to the rule that allows the government to ask for special interrogatories. And finally, it was an error for the lower court to determine that Thompson had standing and then subsequently to strike his claim for failure to fully respond to the special interrogatories. And finally, Thompson's claim to the funds was extremely detailed and included sufficient facts to demonstrate his claim and standing. And the government, as opposed to Thompson, did not have standing because their claim was insufficient pursuant to Rule G2F. What makes you think the only purpose of the special interrogatories is to determine whether the person has standing? Your Honor, in the this matter is governed by the supplemental rules for admiralty or maritime claims and asset forfeitures. Rule G6A allows the government to submit special interrogatories. And the express language says limited to the claimant's identity and relationship to the defendant's property. And it is set out early at the onset of the proceedings, because at the beginning, the claimant knows everything about themselves that their claim. But most of these actions, the government knows very little about the claim, because maybe the guy says, this is my money. Yeah. So how is it? I own them. Yeah. But if he says it's my money, he has standing, doesn't he? I would argue that he does. And then the government has an opportunity to test that standing via these special interrogatories to inquire. Is it necessarily the challenge is standing or is the source of the funds? Well, the source of the funds, in our opinion, goes to standing. And so if he claims. No, he can say it's mine and it's all drug money. He can. So he's got standing, but independent of the source of the funds. Well, I'm not going to argue with you, because that goes to our benefit. But our position and the government's position, I believe, has been that special interrogatories are needed early to explore these allegations that are made in the claim. And so our position is whatever purpose they were, they're to be limited. And we satisfied that purpose with the information that we gave. And so that's our argument. If I may move on. I mean, as I understand the process, you get standing by saying it's mine. Yes. I want it back. Yes. So now you've got standing. But the government wants to find out, is there a legitimate source and wants to investigate the truthfulness of that? Right. Yes, Your Honor. So don't you need to respond to that before they are required to respond to the motion to dismiss? I would totally agree with that, Your Honor. However, there have been cases in which courts have determined, for example, in Lawan versus Defenders of Wildlife, that simple state from 1992, that simple statements in the pleadings can demonstrate standing. Now, we're not arguing that that's what happened here. What we're arguing is that he provided substantive information in his special interrogatory responses. For example, he gave his name, his Social Security number, his address. He told them where he works. He provided three years of W-2 forms from his job. He claimed to have an interest in the property due to his employment and a business ownership of a business called Body by Resilience. And he told them the funds were drawn from PayPal, Bank of America, and Region Bank withdrawals. He stated that the funds were delivered. Some of them were delivered to him in cash for services at the business. He said some of the funds were delivered for him to hold as needed for the business, and some of it were girlfriend gifts and investments to and from his girlfriend. He also provided many pages of financial transactions going back six years that added up to over $100,000. And finally, that documentation demonstrated that the month the money was seized, his business had earned $14,250. And so whatever the purpose, Your Honor, and I trust your judgment more than mine, whatever the purpose of the special interrogatories, he satisfactorily answered them. The court then had a hearing on that issue, and in that hearing, Judge Miller said it was obvious that Thompson had standing. And so we argue that the issue of standing had been decided and determined by the court. Right, but he said he had standing, but he didn't answer the interrogatory satisfactorily, right? He did say that, Your Honor. That's what the fight's about here, not whether he had standing. And our argument is that is an error because, again, pursuant to the plain reading of the statute, special interrogatories are to be limited to the claimant's identity and relationship to the defendant. You mean your point is you think the interrogatories were overbroad and he wasn't required to answer them because they went beyond the rule? No, Your Honor, that's not what I'm stating. What I'm stating is he did answer them. He provided answers. And if I may, Your Honor. Why did Judge Miller think he didn't answer them adequately? You know, and that, Your Honor, is why we're here today, because if you look, turn to the appendix beginning on page 22, the information that Thompson provided in the first set of interrogatories, special interrogatories, goes back all the way to page 7065. And so, Your Honor, if my client provides the government with 40-some-odd pages of responses and documentation, we argue that that would be sufficient when he tells them, hey, this is my bank account. This is my PayPal address. Here's $100,000 of transactions. I've got a job. My girlfriend has a job. We own a business. The business generates tens of thousands of dollars, sometimes per month, $14,000 in the month you took this money. I would think that's sufficient, Your Honor, to meet his obligation pursuant to the rule. If I may, Your Honor, we would argue subsequently that Thompson, he met his obligation. The court said he had standing. The court found that he had standing. In his July 27, 2017, order, the court said the bar that Thompson must chin to adequately plead a claim to the money is fairly low, and that Thompson's explanation in his ownership interest insufficient. All that goes to standing. And so we argue, Your Honor, that the court had determined by its words and through its order that Mr. Thompson had standing. That entitles Thompson to move for a dismissal pursuant to Rule G, B, 1A, and to ask for dismissal because the government had failed to meet its burden. Rule 12G2 requires the government to plead sufficiently detailed facts. And again, statutory interpretation rules require that you to hold Congress, take Congress at its word. Those three words are deficient, or excuse me, are critical. Sufficiently detailed facts. You have held that this imposes a more demanding pleading standard than the federal rules of civil procedure. The government cannot merely notice plead. That was $150,000, $660,000 in U.S. currency from 1992. The government must plead facts sufficient to support a reasonable belief that it can meet the allegations under the claim. You held that in $150,000, $660,000 from 1992. The Supreme Court ruled in Twombly that to avoid dismissal, a complaint must include enough facts to state a claim to relief as plausible in its face. Here the government complaint states when it comes to tying this money to a drug transaction, the positive dog alert, the manner in which the currency was hidden, among other factors, indicate that it was drug money. Other factors is vague. It's not sufficiently detailed. Here the record indicates Thompson was traveling via commercial plane. He put the money in his checked luggage, which everyone in America knows is going to be screened. And so therefore it supports the thought that he didn't have anything to hide. He knew someone was going to recognize that there was money there. Now the government in its brief argues that, hey, we had a dog alert. A dog alert is enough. That's not true. In all of the cases the government cites in which a dog alert was sufficient, there were other factors like a one way ticket, lying about the money being in a bank account, lying about the obligation, use of disposable phones or being on known drug quarters, corridors and or in one case U.S. currency versus $63,530. There was also a strong odor of marijuana, a book on making drugs and the claimant had lied about even having money. And so, Your Honor, I'm going to reserve the remainder of my time for rebuttal. But just before I do, I want to say we all recognize that the Lord giveth and the Lord taketh away. However, that same should not be said of a district court's granting of finding or standing in a case. The judge should not be able to subsequently take that away. And so we ask that you reverse the dismissal. Of Thompson's claim to the money and remand for further proceedings. And with that, I'll reserve the rest of our time for rebuttal unless the court has questions. Very well. Thank you for your argument. Mr. McCree will hear from you. May it please the court. My name is Cameron McCree and I represent the United States of America in this matter. Your Honor, this case comes down to a simple question. Does the government have the right to subject statements that claimants make in their pleadings to adversarial testing? And the government would submit that undoubtedly that we do. Previously, this court has, recently this court has handed down an opinion. Speaking about what needs to be placed into a claimant's claim. And in that opinion, this court also recognized the importance of special interrogatories and the important role that they play in ferreting out claims that are not true and that are frivolous. In this particular case, this is a clear example of the need for special interrogatories. Here, Mr. Thompson made certain statements in his claim. The government sought to test those statements. Mr. Thompson decided himself what he was and was not going to answer. The United States went to court, asked the court for an order to compel him to answer. The court gave that order. Mr. Thompson then decided again he was not going to follow the court's order. He made his own decision about what he was and was not required to do. Here, the district court gave him clear direction about what to do. And when Mr. Thompson was called on, the need to say, why didn't you follow my direction, Mr. Thompson gave the district court a false response as to why he could not respond to the government's special interrogatories after having been ordered to do so. His response was that the government had his documents in his possession. The government showed ample proof that it offered those documents to Mr. Thompson over and over and over again, and Mr. Thompson simply did not take up the government on that request. Had he done that, we wouldn't be here today. There's a number of things that Mr. Thompson could have done to avoid being here today, the first of which would have been simply answering the phone, working with the government, meeting and conferring to work through a discovery dispute before it ever becomes a court issue. So why weren't the responses sufficient when he talked about having the business and the PayPal accounts and that sort of thing? Why wasn't that enough to give you the source of the funds to then go and investigate? I would say that there are a number of issues, but the biggest one that comes out in my mind as I stand here right now is the issue about there are three people who you're purporting to represent, yourself, this business, and your girlfriend. In your claim, you only purport to represent yourself and the business, but you don't say how much money belongs to yourself, how much belongs to the business. Later, once we get into litigation, you bring in this element of your girlfriend. Still, you don't say how much belongs to each particular person. And when that question can't be answered, the government's investigation is frustrated because if Mr. Thompson is claiming $10,000, our investigation is different than if he's claiming $200,000 of this money. It's easier for him to show that he has an interest in the $10,000 as opposed to the $200,000, and we need to know where to focus our interest to figure out what the financial analysis is so we can lay that out for the district court about whether that's true or not. And so that's only one of several questions that he didn't answer. And again, that question had been resolved by the district court, and it was for the district court to decide whether Mr. Thompson had to answer those questions, not Mr. Thompson himself. And that's the function of a motion to compel. If the district court thought these questions were unnecessary, the district court could have denied the motion and moved us down the chain. But once the district court makes that order, Mr. Thompson has an obligation to follow the district court's order. Failure to do so is an affront to the district court. And it's appalling in that Mr. Thompson claims that the government is dragging its feet in this case, but really the government has sought judicial oversight for everything that it's done. When it asked for more time, it went to the district court to ask for more time. When the government wanted to search Mr. Thompson's residence, it went to the district court to ask for permission to do that. Here, Mr. Thompson just had a pattern of blatant disregard for the rules, and he chose himself about what he was and was not going to do. And in this circumstance, we think it's appropriate that the district court struck his claim because he violated the rules, and there was a clear order telling him what he needed to do, and there was no clear reason why he couldn't follow that order. Should we be worried at all about some of the, you know, Judge Miller kind of editorializes at some point, and he says, you know, generally that he's opposed to civil forfeitures as a matter of principle, but this is not the case. And he also seemed to have misstated the burden of proof and shifted it on to Mr. Thompson. And I get where it's kind of in a very odd place in the discussion, and it's one of those things that perhaps as an old trial judge I ought to be more sympathetic to him because he's musing. But in the musing, it does say that, you know, but the burden's on you. And, well, wait a minute. Hold on. The burden's on the government. It's not on Mr. Thompson. And the burden is absolutely on the government, and Judge Miller corrected that error when Mr. Thompson filed his motion to reconsider. Yeah. The function of the reconsideration is to bring up issues before the court so the court can reevaluate its analysis based on a mistake. And so here Judge Miller recognized that the burden is on the government in its order denying the motion to reconsider, and he reaffirmed his initial order saying that even if the burden is on the government, Mr. Thompson has the obligation to answer these questions, and he didn't do it. So my order stands. And so I don't think this court should be worried that there was some mistake that led to this outcome for Mr. Thompson. What about lesser sanctions? You know, striking the response in its entirety is a fairly extreme sanction. If you look at what we do in civil cases generally before we strike somebody's claim or defense, we ordinarily say we're going to order a special deposition, we're going to allow an interrogation perhaps in open court, hold an evidentiary hearing. All these things can happen in discovery disputes, and they do every day. And I get we're under the maritime rules and they're a little different, but it seems to me that we just went kind of at light speed from we don't like your answers to go away, you're done. And why was that not an abuse of discretion? I would say for a few reasons, the first of which is that this court has recognized previously where there is a clear order that's in place and there is a violation of that order willfully and that there's prejudice to the United States, then it's appropriate then to strike a claim. Here there was a clear order. The order on the motion to compel was clear. There was a clear violation of that order because there were obvious deficiencies in Mr. Thompson's answers, and those were outlined in our brief, and also the court outlines them in the order striking his claim. And then there's prejudice to the United States because it impairs our ability to investigate the claim that's here. We're at the stage of the investigation where Mr. Thompson's words are what's important. What he's saying, what he's doing, what he knows that other people don't know, that's the essential part of the investigation at this point, and his failure to give that information obstructs our ability to move forward in this case. But the intermediate sanction would be appropriate, right? I mean, if you just think about it, yes, we say that you can strike the claim, but it is also possible for you to order an interrogation to answer the questions, and if his answers continue to be the same, then just strike it. And I guess what I'm asking is, and your argument is plainly that, sure, the judge could have done that, chose not to, and it was no abuse of discretion for him to do what he did. Yes, Your Honor, I would say that that's certainly the case. So I would say, one, that there's a lot of cases that say exactly what happened here is appropriate. Just because something is appropriate doesn't mean it's the only response, right? I mean, and that's one of the problems that we get into all the time as trial judges. Some will say, well, the court says it's no abuse of discretion to do X. That doesn't mean Y is wrong. That means that X is not wrong. You still have, as a trial judge, broad discretion to handle the case in a number of different ways. And I think that where I'm just a little bit hung up, and I'm not sure how much, is that we have this kind of statement that shifts the burden of proof. We have this kind of statements that say, like, my hands are kind of tied. I don't like this, but this is where we're at. This ain't that case. And yet there's no real direct inquiry ever made to try and get the answers you want. I mean, other than the interrogatories, right? And as we all know, interrogatories are answered by lawyers, and you rarely find out what you need to find out in the answer to any interrogatory, right? And so should we be at all concerned about that process? And I know your answer is no. I'm just still turning it over in my brain. And, Your Honor, I would agree that the answer is no to that question because this is not the case where it's a question about did you phrase it the right way. This is a case where there's information that's simply missing. On the initial motion to strike where Judge Miller denied, we had a hearing. In that hearing, Judge Miller said to Mr. Thompson, who was sitting in the hearing, you have to answer this question about how much of this money are you claiming and how much are you claiming for the business and how much are you claiming for your girlfriend if you're acting on her behalf. And Mr. Thompson's response was that he couldn't do it. And the government pushed and said that all we're asking for is some type of reasonable basis for which you appear in this lawsuit. You think some of this money is yours. You've made that assertion. What's your good faith for believing that that statement is true? That's all we wanted to know. And this is not a case where he tried to do that and didn't come close enough. This is a case he simply didn't do it. After Judge Miller told him to his face, you have to do this. Then Judge Miller ordered him to do it, and he simply didn't do it again. And so that makes this more egregious and it makes it more of an affront. And then the third piece that makes it all the more ridiculous is that, again, when asked about why you didn't do what I told you to do, he told Judge Miller something that simply was not true. And to this day, he has not corrected that. Even in his appeal, he says that the government was hiding my documents. We weren't. We made them available. We tried to find reasonable accommodations to move on from this distributary dispute. Mr. Thompson did not want to move on. He chose to put the government on trial, but he failed to do what Judge Miller told him to do for himself. And so we would ask that this court affirm on the striking of his claim. And then I believe that will resolve the issue on the motion to dismiss. But even on its own, the motion to dismiss should be dismissed, as the district court did, because the facts in our complaint were sufficient to show a reasonable belief that we could meet our burden of proof at trial. Our facts are similar to the facts that this court have found to be sufficient in previous cases after a trial. And so we're just saying before the trial, we have enough evidence to show that we can get to a trial. So, Your Honors, we would ask that in this case, that this court vindicate the authority of the district court to ensure that its orders are followed. And we would ask that this court also only hold the government to the burden of proof that Congress has implied on us as far as the complaints are concerned. So for all those reasons, we would ask that this court affirm the judgment of the district court. And if there's nothing further, I'll take my seat. Thank you, Your Honors. Very well. Thank you for your argument. Mr. Sprinkle, I understand you wish to make rebuttal. Yes, Your Honor. May I please, the Court? I want to start with the statements that the government just made, that it would be difficult for them to move forward, that essentially Thompson's behavior was ridiculous, and that Thompson said they were hiding the documents. Really, what that ignores is the fact that Thompson never said the government was hiding the documents. Thompson said the government had the documents, and he didn't have access to them himself. The fact that the government had 600 gigabytes of data, the government had seized documents from two businesses and from the home, itself would alleviate the issue that the government can't move forward. The government essentially is saying that we have enough information for Thompson to state this claim. However, we're at a disadvantage of information. In addition to that, Thompson did receive- Did the government make that available? I think he just said he did. Yes, yes. The government said that we have the documents. The irony of that is that- Well, not just we have them. We'll make them available to you so you can answer the questions. Yes, yes. The irony of that is that the government has the documents. Does that absolve you of the responsibility to answer the interrogatories because they could dig through it themselves? Well, the interrogatories- Is that the argument? It does not. However, the interrogatories- Well, I would say that on one hand, it does, and I'll get to that in a second, but on one hand, Mr. Thompson did respond very thoroughly. Mr. Thompson identified his employer. He identified the businesses. And so we get to the purpose of the special interrogatories, and they are, by the case law and by the law, they are limited to the issue of standing. In U.S. v. $133,420 in U.S. currency, it says it further interprets the G-6 requirement that the interrogatories are limited to the source of the money. It says that the government may propound the interrogatories for information that bears on the claimant's standing. In another case, the court reversed the district court because the district court threw out the interrogatories that were pretty much wholly unresponded to, much less response than Mr. Thompson gave. And the reason was that he stated that part of it came from his job. And so it was uncontroverted. The court says that it was uncontroverted that he had standing, and therefore the response to the interrogatories were unnecessary. And so the courts have made it clear that the special interrogatories are specifically to get the government out of its initial deficit, that where it comes across money, there's no pending investigation, it has no perspective on the money. And so the interrogatories are to get at that perspective where it does understand that the person is at least alleging. And the cases actually say that all you have to do is make an allegation of where the money came from. You don't have to prove it. To require Mr. Thompson to prove by some standard that the money was what he said it was would be shifting the burden and would make the statute unconstitutional. The reason that the interrogatories are limited is because it specifically places the burden on the government. The statements by the court were wrong. The burden is not on Thompson, it's on the government. Using the special interrogatories to shift the burden would place it on Thompson. All he has to do is make allegations that show where the money came from. This case stands alone. There's no case where the government's dismissal stood or the forfeiture stood where there was so little information, the statements were so slight by the government and where the information that the government had was so massive. This is the only case where the government had 600 gigabytes of data that they specifically went to the businesses and went to his house so they knew where they were and took that information. Then Mr. Thompson provided pages and pages and pages that showed over $100,000 that came from somewhere. All of that was given and still the government said it's insufficient. It's our position that he made the allegations. What was that last case you were citing that you said limited the interrogatories to standing? Did you say that was a $133,000 case? It was $133,000 that specifically said it's limited to standing. Is that from the Ninth Circuit? That was from the Ninth Circuit. In $154,000, the court followed that same reasoning when it said that the special interrogatories weren't necessary because standing was uncontroverted. We'll check that. Thank you for your argument. Thank you. Thank you to all three counsel. The case is submitted and the court will file an opinion in due course. Gentlemen, you're excused. Please call the next case for argument. The next case for oral argument is Albert Briggle v. City of Pine Bluff, etc. Thank you.